1  Scott B. Cooper, SBN 174520
   scott@cooper-firm.com
2  THE COOPER LAW FIRM, P.C.
3  2030 Main Street, Suite 1300
   Irvine, CA 92614
4  Tel.: (949) 724-9200; Fax: (949)724-9255

5  Roger R. Carter, SBN 140196
   rcarter@carterlawfirm.net
6  THE CARTER LAW FIRM
7  2030 Main Street, Suite 1300
   Irvine, CA 92614
8  Tel.: (949) 260-4737; Fax: (949) 260-4754

9  Marc H. Phelps, SBN 237036
10 marc@phelpslawgroup.com
   THE PHELPS LAW GROUP
11 2030 Main Street, Suite 1300
   Irvine, CA 92614
12 Tel: (949) 260-4735; Fax: (949) 260-4754

13 Attorneys for Plaintiff GABRIEL JIMENEZ

14

15              UNITED STATES DISTRICT COURT

16            CENTRAL DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| 18 GABRIEL JIMENEZ, individually and on behalf of all others similarly situated and on behalf of the general public, | Case No. SACV 12-310 AG (JPRx) |
| 20 | **PLAINTIFF'S  NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION** |
| 21              Plaintiffs, | |
| 22 v. | **[Declarations of Gabriel Jimenez, Scott B. Cooper, Roger R. Carter, and Marc H. Phelps Filed Concurrently Herewith]** |
| 23 O'REILLY AUTOMOTIVE, INC.; O'REILLY AUTOMOTIVE STORES, INC.; CSK AUTO, INC.; and DOES 1 through 10, inclusive, | |
| 26              Defendants. | Date:   January 13, 2014 Time:  10:00 a.m. Ctrm:   10D |

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, that on January 13, 2014, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10D of this Court located at 411 West Fourth Street, Santa Ana, California, Plaintiff Gabriel Jimenez will, and hereby does, move the Court for an order granting class certification.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 29, 2013.

This Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities attached hereto, the Declarations of Gabriel Jimenez, Scott B. Cooper, Roger R. Carter, and Marc H. Phelps filed herewith, the papers and records on file herein, and on such oral and documentary evidence as may be presented at or before the hearing on the Motion.

Dated:  November 4, 2013                   THE COOPER LAW FIRM, P.C.

By: _____
    Scott B. Cooper
    Attorneys for Plaintiff

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................1

II.   RELEVANT FACTUAL BACKGROUND……………………………..2

III.  APPLICABLE LAW REGARDING REST PERIODS.................................4

IV.  ARGUMENT AND CITATION OF AUTHORITY......................................5

    A.  Standards for Certification ......................................................5

    B.  The Proposed Class and Subclass.............................................6

    C.  The Proposed Class Meets the Requirements for Certification
        On Plaintiff's Rest Period Claim.............................................6

       1.  Common Questions of Law or Fact Predominate ................................6

       2.  A Class Action is the Superior Method for Adjudication of
           These Claims……………………………………………………..9

          a.  Class Members Have no Interest in Pursuing Individual
             Litigation................................................................... 10

          b.  Litigation Should be Concentrated in this Court ...................... 10

          c.  No Significant Management Difficulties Are Present.............. 11

       3.  Plaintiff is Typical of Those in the Proposed Class and Subclass
          He Seeks to Represent........................................................ 13

       4.  The Proposed Class Representative is Adequate................................ 14

       5.  The Proposed Class is Ascertainable and Sufficiently
          Numerous.......................................................................... 15

V.   CONCLUSION............................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997) ........................................10

*Balasanyan v. Nordstrom, Inc.,* ___ F.R.D. ___,
2013 WL 4517821 (S.D. Cal. Aug. 12, 2013).........................................................5

*Bates v. United Parcel Servs.,* 204 F.R.D. 440 (N.D. Cal. 2001) .............................11

*Bell v. Farmers Ins. Exch.,* 115 Cal. App. 4th 715 (2004)..................................12

*Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975)...........................................5

*Brinker Restaurant Corp. v. Superior Court,* 53 Cal. 4th 1004 (2012)..........*passim*

*Capitol People First v. Dept. of Developmental Serv.,*
155 Cal. App. 4th 676 (2007)..........................................................12

*Cardona v. Worldwide Techservices LLC,*
2012 WL 3185019 (9th Cir. July 11, 2012) ...............................................8

*Eisen v. Carlisle & Jacqueline,* 417 U.S. 156 (1974)......................................10

*General Tel. Co. v. Falcon,* 457 U.S. 147 (1982).........................................14

*Haley v. Medtronic, Inc.,* 169 F.R.D. 643 (C.D. Cal. 1996)...........................13

*Hanlon v. Chrysler Corp,* 150 F.3d 1011 (9th Cir. 1998)........................9, 10. 12, 14

*Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir.1992)...........................12

*Hansen v. Ticket Track, Inc.,* 213 F.R.D. 412 (W.D. Wash. 2003)....................13

*Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909 (9th Cir. 964)...............14

*Ikonen v. Hartz Mountain Corp.,* 122 F.R.D. 258 (S.D. Cal. 1988)...............14, 15

*In re AutoZone, Inc., Wage and Hour Employment Practices Litigation,*
289 F.R.D. 526 (N.D. Cal. 2012).....................................................2, 6, 8

# TABLE OF AUTHORITIES
## (cont.)

*In re Chevron U.S.A., Inc.*, 109 F.3d 1016 (5th Cir. 1997).......................................12

*In re Simon II Litig.*, 211 F.R.D. 86 (E.D.N.Y. 2002)...............................................12

*Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982)..............................13

*Lerwill v. Inflight Motion Pictures, Inc.* 582 F.2d 507 (9th Cir. 1978)................13

*Leyva v. Medline Indus. Inc.*, 716 F.3d. 510 (9th Cir. 2013) ......................................5

*Schulz v. QualxServ. LLC,*
2012 WL 1439066 (S.D. Cal. Apr. 26, 2012) ............................................................8

*Schwartz v. Harp*, 108 F.R.D. 2779 (C.D. Cal. 1985) ............................................. 12

*Sav-On Drug Store, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004)................... 12

*Staton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003)...........................13, 14

*Sullivan v. Chase Inv. Services of Boston, Inc.,*
79 F.R.D. 246 (N.D. Cal. 1978)...............................................................................13

*United Steel v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010)............................5

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)....................... 9

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2010)....................... 5

## STATUTES AND RULES

Federal Rules of Civil Procedure, Rule 23.................................................. ...passim

IWC Wage Order 7-2001.................................................................................4

8 Cal. Code of Regs. §11040...............................................................................4

Cal. Lab. Code §226.7 .................................................................................4, 7

# TABLE OF AUTHORITIES
**(cont.)**

## TREATISES

3 Newberg on Class Actions................................................................11

Wright, Miller & Kane, *Federal Practice and Procedure* (2007 ed.) ................13

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This is an employment class action brought on behalf of all Store Managers at Defendant CSK Auto, Inc.'s ("CSK" or "Defendant") California locations. CSK maintains a uniform, written policy regarding rest periods that, on its face, violates California law. Because this policy applies uniformly to all putative class members, Plaintiff's rest break claim can be determined on a class-wide basis, and the classes defined below should be certified with respect to the this claim, as well as derivative claims stemming from the rest break violations.[1]

Because Plaintiff's rest break claim is based on a uniform policy and/or practice consistently applied to class members, it presents common issues amenable to common proof and is appropriate for class certification. In *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033 (2012), the California Supreme Court held that "[c]laims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment."

Class certification on Plaintiffs' rest break theory is appropriate because Defendant's written rest break policy, applicable to all class members, violates California law. Specifically, the policy fails to authorize a second rest break for employees working shifts of between six and eight hours and a third rest break for employees working between ten and twelve hours. CSK's policy at issue here is practically identical to the employer's rest period policy in *Brinker* that was found to

---

[1] Plaintiff is not seeking certification on his first cause of action for failure to provide meal periods. Plaintiff's discussion in this brief focuses on the rest period claim as the other primary claim in the case. The remaining causes of action (for waiting time penalties, unfair business practices, and PAGA penalties) are derivative of the rest period claim and should therefore be certified along with the rest period claim.

1

1   be non-compliant and certifiable. Accordingly, as in *Brinker*, this claim is amenable

2   to certification. The derivative claims that are based on the rest period claim (failure

3   to pay all wages at separation, unfair competition, and PAGA violations) are

4   likewise certifiable.

5       A class action provides the best means for CSK's Store Managers to be

6   compensated for missed rest periods. CSK maintains a uniform policy which is

7   illegal on its face. This discrete policy, which Plaintiff alleges violates California

8   law, presents common legal and factual questions suitable for certification under

9   Rule 23. In fact, this is precisely the type of case that other district courts within the

10  Ninth Circuit have found appropriate for class treatment. *See e.g., In re AutoZone,*

11  *Inc. Wage and Hour Employment Practices Litigation*, 289 F.R.D. 526 (N.D. Cal.

12  2012) (certifying rest break class based on facially unlawful policy virtually

13  identical to the one at issue in this case).

## II.   RELEVANT FACTUAL BACKGROUND

15      CSK owns and operates a chain of automotive parts stores throughout

16  California and other states. It currently has approximately 497 stores in California,

17  and CSK staffs those stores with non-exempt, hourly employees. Each store is

18  staffed by at least one "Store Manager" who supervises the other employees and

19  manages the day-to-day operations in that store. (Declaration of Gabriel Jimenez

20  ("Jimenez Decl."), ¶ 4.)

21      Plaintiff Gabriel Jimenez has a long employment history with CSK. He began

22  working for them in 1997, and over the years, he held five different job positions

23  and worked at five different CSK locations. (Declaration of Gabriel Jimenez

24  ("Jimenez Decl."), ¶¶ 2-3.) He was a Store Manager for over six years until he was

25  terminated on September 7, 2011 (following a leave of absence). (*Id.* at ¶ 4.) At all

26  times, he was paid hourly. (*Id.* at ¶ 3.)

27      As an hourly non-exempt Store Manager, he was subject to the same rest

28  break policies as the rest of the Store Managers and other hourly store employees

(who are referred to at various times in the CSK policy documents as "associates" or "team members"). (*See, e.g.,* Declaration of Scott B. Cooper ("Cooper Decl."), Ex. A, Bates No. CSK001304.) CSK's rest break policy is stated in numerous documents, some with slightly different language, but it can be summed up as follows: "The paid rest period must be 10 minutes net rest time for every four hours of work." (*Id.,* Ex. B., Bates No. CSK000458.) Other CSK policy documents confirm this same policy – one rest period allowed for every four hours of work:

- Cooper Decl., Ex. A, Bates No. CSK001304 ("All associates are entitled to a rest period during each four hours worked.");
- Cooper Decl., Ex. C, Bates No. CSK002287 ("Regular rest breaks . . . should be scheduled as close to the middle of each four hours worked as possible.");
- Cooper Decl., Ex. D, Bates No. CSK001383 (Rest periods "must be a minimum of 10 minutes for each four hours worked.")
- Cooper Decl., Ex. E, Bates No. CSK001642 (same); and
- Cooper Decl., Ex. F, Bates No. CSK000441 (same).

Further, at the Rule 30(b)(6) deposition, CSK's representative confirmed that it was CSK's policy to provide one rest break for every four hours worked. (Deposition of David Vanden Bos ("Vanden Bos Dep."), attached as Exhibit G to the Cooper Decl., p. 50:16-26.)

Finally, less than two months after this case was filed, CSK had its California Store Managers sign a document entitled "Acknowledgment of Meal and Rest Breaks Taken." These documents all make the following identical representation: "I have been provided the opportunity to take all meal and rest breaks to which I was entitled (generally, a 30-minute uninterrupted meal break, and **two 10-minute uninterrupted rest breaks for an eight-hour shift**)." (*See, e.g.,* Cooper Decl., Ex. H, Bates No. CSK001846 (emphasis added).) In other words, even after it was on

3

notice of Plaintiff's rest period claims, CSK (most likely through its lawyers) reaffirmed the policy of providing one rest period for every four hours worked.

### III.   APPLICABLE LAW REGARDING REST PERIODS

California's meal and rest break laws are codified in the IWC Wage Orders, the pertinent one here being IWC Wage Order No. 7-2001.  Pursuant to Wage Order No. 7-2001, subd. 12(A):

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours **or major fraction thereof**. (Emphasis added.)

In *Brinker*, the California Supreme Court explained how the timing requirement of the wage order worked by determining that any time longer than two hours is considered a "major fraction," when applied to a four-hour period:

> Employees are entitled to 10 minutes' rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on.

*Brinker*, 53 Cal. 4th at 1029.  If the employer fails to provide an employee with rest periods in accordance with California law – e.g., failing to authorize and permit 20 minutes of rest break time for shifts of more than six hours and 30 minutes of rest time for shift longer than 10 hours – the employer must pay the employee a full additional hour of compensation. 8 Cal. Code of Regs. § 11040, subd. 12(B); Cal. Lab. Code § 226.7(b).

Under CSK's rest break policy, an employee's first rest break accrues at 4 hours, his second at 8 hours, his third at 12 hours, and so on.  Thus, a CSK employee who works more than 6 hours but less than 8 hours is not entitled to a second rest break under Defendant's policy, and an employee who works more than 10 hours but less than 12 hours is not entitled to a third rest break.  This policy violates rest

4

1  period provisions in the Wage Order, as interpreted by *Brinker*.  *Brinker*, 53 Cal. 4th

2  at 1033.

### IV.   ARGUMENT AND CITATION OF AUTHORITY

**A.   Standards for Certification**

5  A party seeking to certify a class must demonstrate that it has met all four

6  requirements of Federal Rule of Civil Procedure 23(a),[2] and at least one of the

7  requirements of Rule 23(b) – in this case, Rule 23(b)(3).  *See Zinser v. Accufix*

8  *Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  The focus of class

9  certification is to determine whether a plaintiff's theory of recovery is amenable to

10  adjudication in a class action, not whether plaintiff will ultimately prevail.  *See*

11  *United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010); *Balasanyan*

12  *v. Nordstrom, Inc.*, ___ F.R.D. ___, 2013 WL 4517821, *5 (S.D. Cal. Aug. 12,

13  2013).

14  Moreover, it is well established that the fact that class members may have

15  differences in damages is *not a bar* to certification.  *Leyva v. Medline Indus. Inc.*,

16  716 F.3d 510, 514 (9th Cir. 2013) ("the presence of individualized damages cannot,

17  by itself, defeat class certification under Rule 23(b)(3).")  Class treatment is

18  appropriate even if each class member may at some point be required to make an

19  individual showing as to eligibility for recovery.  *See Blackie v. Barrack*, 524 F.2d

20  891, 905 (9th Cir. 1975).

21  ///

22  ///

23  ///

24

25  [2] Rule 23(a) provides that, to certify a class, Plaintiffs must demonstrate that "(1) the

26  class is so numerous that joinder of all members is impracticable; (2) there are

27  questions of law or fact common to the class; (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class; and (4) the

28  representative parties will fairly and adequately protect the interests of the class."

**B.   The Proposed Class and Subclass**

Plaintiffs move the Court to certify a class and a subclass.  The class is defined as follows:

> All of Defendants' current and former California employees holding the job position of Store Manager, or an equivalent position, employed on or after four years prior to the commencement of this action through the date of trial ("Class" or "Class Members").

The subclass is defined as follows:

> All members of the Class whose employment with Defendants terminated within three years prior to the commencement of this action through the date of trial ("Waiting Time Subclass").[3]

**C.   The Proposed Class Meets the Requirements for Certification on Plaintiff's Rest Period Claim.**

**1.   Common Questions of Law or Fact Predominate.**

A prerequisite to all class actions is that there must be questions law or fact common to the class.  Fed R. Civ. P. 23(a)(2).  Additionally, Rule 23(b)(3) provides that certification may be granted where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[4]  The Rule 23(a)(2)

---

[3] The Waiting Time Subclass applies only to Plaintiff's third cause of action for failure to timely pay wages upon separation of employment under Labor Code Sections 201-203.  It is alleged as a subclass because that claim carries the additional requirement that the employee be separated from CSK.

[4] The rule continues, "The matters pertinent to these findings include:  (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of

1   commonality inquiry and the Rule 23(b)(3) predominance inquiry may be

2   appropriately addressed in a single discussion. *AutoZone*, 289 F.R.D. at 533 n. 10.

3       In this case, Plaintiff's rest break claim presents legal or factual questions that

4   are common to the class and predominate over any individual issues.  As

5   demonstrated above, throughout the class period, CSK's rest break policy was to

6   provide one break for every four hours worked.  (Cooper Decl., Exs. A-H.)

7   Contrary to California law, this policy does not provide additional rest periods for

8   shifts between 6 and 8 hours, or shifts between 10 and 12 hours. *Brinker*, 53 Cal.

9   4th at 1029.  Accordingly, class-wide common questions predominate as to whether

10  Defendant's uniform written rest beak policy violates California law and as to

11  whether employees who were subject to the policy are entitled to an additional hour

12  of pay pursuant to section 226.7(b).

13      The pertinent authorities confirm that common questions of fact and law will

14  predominate here.  Foremost, in *Brinker*, the California Supreme Court held that the

15  trial court properly certified a rest break subclass in light of the evidence submitted

16  regarding a common, uniform, non-compliant rest period policy virtually identical to

17  the policy at issue in this case. *Brinker*, 53 Cal. 4th at 1033 (the policy in Brinker

18  read: "If I work over 3.5 hours during my shift, I understand that I am eligible for

19  one ten minute rest break for each four hours that I work.").  The California

20  Supreme Court emphasized that "[c]laims alleging that uniform policy consistently

21  applied to a group of employees is in violation of the wage and hour laws are of the

22  sort routinely, and properly, found suitable for class treatment." *Id.* at 1033

23  (citations omitted).[5]

24

25

26  concentrating the litigation of the claims in the particular forum; and (D) the likely
    difficulties in managing a class action."

27
    [5] Further, Plaintiffs' theory of recovery does not implicate individual issues of

28  waiver because, as in *Brinker*, "[n]o issue of waiver ever arises for a rest break that

1    Moreover, other district courts and California state courts have already
2 applied *Brinker* and certified rest break claims based on rest break policies that
3 allegedly violated California law because they authorized only one rest break for
4 employees who worked a shift shorter than eight hours or did not affirmatively
5 authorize any breaks at all.  *See, e.g., In re AutoZone, Inc.*, 289 F.R.D. 526 (N.D.
6 Cal. 2012); *Schulz v. QualxServ, LLC.*, 2012 WL 1439066, *23 (S.D. Cal. Apr. 26,
7 2012), *pet. app. granted Cardona v. Worldwide Techservices LLC*, 2012 WL
8 3185019 (9th Cir. July 11, 2012).

9    In *AutoZone,* the court certified a rest break class based on a facially invalid
10 rest break policy that was, like *Brinker*, essentially the same as CSK's policy in this
11 case.  The written policy at issue in *Autozone* was "An AutoZoner who works 4
12 hours per day is provided 1 break period of 10 consecutive minutes; an AutoZoner
13 who works 8 hours per day is provided 2 break periods of not less than 10
14 consecutive minutes."  *AutoZone*, 289 F.R.D. at 531.  The court concluded,
15 "[b]ecause this subclass's claims are based entirely on the legality of Defendant's
16 uniform written rest break policy, the Court concludes that common questions
17 predominate."  *AutoZone* at 535.   As in *AutoZone* and *Brinker*, the theory that
18 Defendant's "one rest break every four hours" policy is illegal on its face presents a
19 common question for certification.

20    Similarly, in *Schulz*, the court followed the California Supreme Court's
21 holding in *Brinker* in affirming that the trial court properly certified a rest break
22 subclass that challenged the employer's "common corporate policy."  *Schulz*, 2012
23 WL 1439066, *8.  The court stated in reaching that conclusion that "the Supreme
24 Court noted that if the employer prevails on its claim that its policy satisfies the law,
25
26
27
─────────────────────────────────────────────
28 was required by law but never authorized; if a break is not authorized, an employee
has no opportunity to decline to take it."  *Id.*

1   then the defendant benefits from the preclusive benefits of a class determination."

2   *Id.* at \*24 (citing *Brinker*, 53 Cal. 4th at 1033-34).

3     *Brinker*, *AutoZone*, and *Schulz* are all directly on-point: a class based on the

4   theory that a uniform break policy facially violates California law is proper for

5   certification.  As in these three cases, Plaintiffs' theory of liability is based on

6   Defendant's illegal written rest break policy, which applies uniformly to all class

7   members.  Accordingly, the Court should find that Plaintiff's rest break theory

8   presents questions of law or fact common to all class members that predominate

9   over individual questions.

10    **2.** **A Class Action is the Superior Method for Adjudication of These**

11     **Claims.**

12    Rule 23(b)(3) also requires this Court to determine whether "a class action is

13  superior to other available methods for a fair and efficient adjudication of the

14  controversy," which happens "[w]here class wide litigation of common issues will

15  reduce litigation costs and promote greater efficiency" and where "no realistic

16  alternative exists to class wide treatment."  *Valentino v. Carter-Wallace, Inc.*, 97

17  F.3d 1227, 1234-35 (9th Cir. 1996).  Rule 23(b)(3) lists the "matters pertinent" to

18  these findings, including those discussed below.[6]

19  ///

20  ///

21  ///

22

23  ───────────────

24  [6] One of the factors is "the extent and nature of any litigation concerning the
controversy already begun by or against class members."  Fed. R. Civ. P.

25  23(b)(3)(B).  Plaintiff is aware of another putative class action alleging rest period
violations against CSK based on the same policy at issue in this case.  *See Owens v.*

26  *CSK Auto, Inc.*, Case No. BC475210 (Los Angeles County Superior Court).  The

27  putative class in that case is all non-exempt hourly employees of CSK, but the class
definition specifically **excludes** Store Managers, so the classes in the two cases do

28  not overlap.

1          (a)     Class Members Have no Interest in Pursuing Individual
2                  Litigation.

3          One factor to be considered is the interest of each class member in

4   "individually controlling the prosecution or defense of separate actions." Fed. R.

5   Civ. P. 23(b)(3)(A).  Here, any such interest is minimal because individual damages

6   are too small to realistically litigate given the time and costs of litigation.  *See*

7   *Harlan v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998).  Any suggestion that

8   individual class members have a strong interest in individually controlling their own

9   litigation is both naive and contrary to the philosophy of Rule 23.  The only realistic

10  way for class members to obtain relief for CSK's illegal employment practices is via

11  the class action device.

12         In other words, "[t]he class action is one of the few legal remedies the small

13  claimant has against those who command the status quo." *Eisen v. Carlisle &*

14  *Jacqueline*, 417 U.S. 156, 186 (1974) (Douglas, J., concurring and dissenting in

15  part).  If Plaintiff cannot prosecute his relatively modest monetary claims on a class-

16  wide basis, he and the Class will be left without recourse or remedy.  The United

17  States Supreme Court aptly explained that "[t]he policy at the very core of the class

18  action mechanism is to overcome the problem that small recoveries do not provide

19  the incentive for any individual to bring a solo action prosecuting his or her rights."

20  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

21         (b)     Litigation Should be Concentrated in this Court.

22         Another factor to be considered is the desirability "of concentrating the

23  litigation of the claims in the particular forum." *See* Fed. R. Civ. P. 23(b)(3)(C).

24  The United States District Court for the Central District of California is a logical

25  forum to resolve this case; it is convenient for the parties and their counsel.  Mr.

26  Jimenez resides in the Los Angeles area, and members of the Classes currently

27  reside and/or have resided in California.  CSK is and has been, at all times relevant

28  to this lawsuit, a corporation authorized to conduct and actually conducting business

in California, and it conducts substantial business within the Central District.
Therefore, because Plaintiffs and Defendant are within this Court's jurisdiction, it is
the appropriate forum for this suit.  Further, because no other particular forum stands
out as a more "logical venue for concentration of claims," this venue is appropriate.
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998).

(c)  No Significant Management Difficulties Are Present.

The final factor compares "the difficulties likely to be encountered in the
management of a class action" with other available alternatives.  *See* Fed. R. Civ. P.
23(b)(3)(D).  Liability to the Class will be determined on the basis of common proof
of the policy at issue and the common fact of damage to all class members.  No
significant difficulties exist.

Plaintiff proposes a bifurcated trial with a liability phase and damages phase.
*See, e.g., Bates v. United Parcel Servs.*, 204 F.R.D. 440, 443, 448 (N.D. Cal. 2001)
(granting motion to bifurcate where "[t]he first proposed phase would address
'General liability to the Class and equitable (Injunctive and Declaratory) relief
issues,' and the second phase would address 'Named Plaintiff and Class damages'".)
During the liability phase, Plaintiff will present common evidence regarding
Defendant's corporate policy and practices with regard to rest periods, including
Defendant's written, uniform, state-wide policy documents, as well as testimony
from Defendant's corporate representative(s).

If the fact-finder determines that liability exists, the Court can hold a damages
phase regarding the number of violations, non-exempt employees' hourly wages,
and penalty calculations.  Plaintiffs will provide the trier of fact with a basis to
calculate class-wide relief through the presentation of data and/or statistics (through
lay and expert witnesses), as well as evidence regarding the effect of the conduct at
issue.  *See* 3 Newberg on Class Actions § 10.5 at 483-87.

Most of the evidence necessary to establish class-wide damages is readily
available through Defendant's own time and payroll databases which contain,

among other information, hours worked per work day and wage rates.  If necessary, damages determinations will also be augmented by survey evidence showing the incidence of ultimate violations.

Specifically, with respect to calculating rest break damages, class members' damages can be calculated through an examination of their time and payroll records by first identifying those Store Managers who worked periods between 6 and 8 hours in length or between 10 and 12 hours in length – the work periods in which Defendant did not authorize or permit the required number of rest periods in violation of California law.  Damages for each class member may then be further tailored through survey techniques and expert testimony.  *See, e.g., Capitol People First v. Dept. of Developmental Serv.*, 155 Cal. App. 4th 676, 692-93 (2007); *Sav-on Drug Store, Inc. v. Superior Court*, 34 Cal. 4th 319, 333, n.6 (2004); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 750 (2004) (statistical sampling in a class action proper since it "does not dispense with proof of damages but rather offers a different method of proof"); *see also In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019-20 (5th Cir. 1997) ("The essence of the science of inferential statistics that one may confidently draw inferences about the whole from a representative sample of the whole"); *In re Simon II Litig.*, 211 F.R.D. 86, 150 (E.D.N.Y. 2002), *vacated and remanded on other grounds*, 407 F.3d 125 (2d Cir. 2005) ("The use of statistical evidence and methods in the American judicial system to establish liability and damages is appropriate" in mass injury cases).

The superiority of class treatment to other available methods of litigating these claims is unquestionable.  The only alternatives to certifying the Class in this case are to force hundreds of employees to file individual, uniform actions or, as is much more likely, to abandon their legal rights altogether.  Considering these realities, the inefficiency and injustice that would result from a failure to utilize class action procedures in this litigation, both to the parties and the Court, is manifest.

### 3. Plaintiff is Typical of Those in the Proposed Class and Subclass He Seeks to Represent.

The Ninth Circuit has held that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1120. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

"[T]he requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other class members." Wright, Miller & Kane, *Federal Practice and Procedure* § 1764 (2007 ed.). In other words, "[f]actual variations are not fatal to a proposed class when the claims arise out of the same remedial and legal theory." *Sullivan v. Chase Inv. Services of Boston, Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978). Rather, as the Ninth Circuit has noted, typicality is satisfied so long as the named plaintiff's claims "stem[] from the same event, practice, or course of conduct that forms the base of the class claims and [are] based upon the same legal remedial theory." *Jordan v. Cty. of Los Angeles*, 669 F.2d 13 11, 1321 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982).

Plaintiff Jimenez is typical of both the Class and the Subclass. During the relevant time period, he was a non-exempt Store Manager, and he was subject to the same rest period policies as the rest of the non-exempt Store Managers. (Jimenez Decl., ¶¶ 6-9.) Further, he is also typical of the Waiting Time Subclass because his employment with CSK terminated in September 2011, less than three years before the filing of this action. (*Id.* at ¶ 2.)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

### 4.   The Proposed Class Representative is Adequate.

Under the Ninth Circuit's two-prong test for determining adequacy of representation under Rule 23(a)(4), a plaintiff is considered an "adequate" class representative if: "(1) the attorney representing the class is qualified and competent; and (2) the class representatives do not have interests antagonistic to the remainder of the class." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 649-650 (C.D. Cal. 1996) (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 5 12 (9th Cir. 1978)); see also *Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412, 415 (W.D. Wash. 2003).

In *Staton v. v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003), the Ninth Circuit phrased the adequacy of representation test as follows: (1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Staton*, 327 F.3d at 957; *Hanlon*, 150 F.3d at 1020.

There are no conflicts here because the claims of Mr. Jimenez and the class are co-extensive. (Jimenez Decl., ¶¶ 9-10); *see General Tel. Co. v. Falcon*, 457 U.S. 147, 157-158 n. 13 (1982). Further, Mr. Jimenez and proposed class counsel have prosecuted and will continue to prosecute the action vigorously, and class counsel has extensive relevant experience. (*See* Cooper Decl., ¶¶ 12-21; Declaration of Roger R. Carter ("Carter Decl."), ¶¶ 3-11; Declaration of Marc H. Phelps,  ¶¶ 5-8.) Messrs. Cooper and Carter have been appointed class counsel on numerous cases, both through contested motions for class certification and motions for approval of class action settlements. (Cooper Decl., ¶ 15; Carter Decl., ¶ 8-11.)  Recently, in a contested proceeding, Mr. Cooper was appointed co-lead counsel in a wage & hour class action involving five related cases and at least ten law firms representing the twelve named plaintiffs. (Cooper Decl., ¶ 15.)

///

///

1    **5.    The Proposed Class is Ascertainable and Sufficiently Numerous.**

2          The class must be adequately defined and ascertainable before a class action

3    may proceed. *See* Fed. R. Civ. P. 23(a)(1). Here, Class Members are easily

4    identifiable because the definition for the Class is objectively defined, and the Class

5    Members' identities may be ascertained through Defendant's corporate records.

6          Rule 23(a)(l) also requires that the proposed class(es) be "so numerous that

7    joinder of all members is impracticable." "'Impracticability' does not mean

8    'impossibility,' but only the difficulty or inconvenience of joining all members of

9    the class." *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913-14 (9th

10   Cir. 1964) (citing Rule 23(a)(l)). As a general rule, classes of forty or more class

11   members are considered sufficiently numerous. *Ikonen v. Hartz Mountain Corp.,*

12   122 F.R.D. 258, 262 (S.D. Cal. 1988).

13         In this case, the numerosity of the proposed Class cannot reasonably be

14   disputed. As of August, 2012, CSK represented that there were approximately 916

15   Class Members. (Cooper Decl., ¶ 11.) Thus, Class membership will far exceed the

16   class member threshold requirements. *See Ikonen*, 122 F.R.D. at 262.

17                          **V.    CONCLUSION**

18         For the foregoing reasons, Plaintiff respectfully requests that the Court grant

19   this Motion and enter the proposed Order certifying the proposed Class and Subclass

20   of current and former CSK employees, appointing Plaintiff as the representative of

21   the Classes, designating Plaintiff's counsel as counsel for the plaintiff Classes, and

22   directing that notice be sent to the Class.

23

24   Dated: November 4, 2013          THE COOPER LAW FIRM, P.C.

25

26                                    By:

27                                        Scott B. Cooper
                                      Attorneys for Plaintiff

28

15